Good morning, Your Honors. May it please the Court, Stephanie Douglas on behalf of Ford Motor Co. Ford asks this Court to reverse the District Court's interpretation of Oregon's Product Liability Statute proposed, ORS 30.905, as contrary to the plain language and the context of that statute. The statute has two sections. The first subsection is a discovery rule. It says that you have to bring a claim within two years of the time that the plaintiff discovers or should have discovered the damage. That section is subject to the limitation of subsection 2, which is a statute of repose. That subsection says that the claim must be commenced before the latter of ten years or the expiration of any statute of repose in the state of manufacture. In this case, the state of manufacture was Missouri, which did not have a statute of repose, which leaves the comparison between ten years and a nonexistent statute of repose as ten years. So how many states have a statute of repose that exists for ten years? I don't know the answer to that question, Your Honor. I think only about 17 to 20 states have statutes of repose, and the legislative history suggests that ten years is right in the middle of those periods. Uniquely suggested that there were only a handful of states that had a statute of repose. It might be somewhere between 12 and 15 years. Is that correct? That's correct. If that's correct, then under your reading of the Oregon statute, the Oregon legislature created an exception that only affected half a dozen states. That's correct. Why would they do that? It is a modest incremental extension of the statute of repose rather than a drastic repeal of the statute of repose in most cases. A repeal that would be unconstitutional is the answer the legislature meant. If Ms. Miller had sued your client in Missouri, would you have a statute of repose? You would have to look to the choice of law in Missouri. And that the Missouri choice of law invoked Missouri's law. In that case, you're correct. There would be no statute of repose in Missouri. If Missouri's choice of law rules chose Missouri as the choice of law, many states choose the state of injury as the choice of law. There's a hypothetical for applying Missouri law here. That's correct. On one side or the other, if they have no statute of repose, Missouri would offer no protection to her client as a statute of repose. That's correct. So why don't we read, given Judge Wybie's question, why don't we read this statute as saying, look, when people are suing an Oregon residence or suing an Oregon court, in addition to the benefits of our discovery rules, which will kind of offer the statute of repose, we will give them the benefit of the laws in the state where they could have sued the state manufacturer. Why is that? I mean, let me say, I think you have the better linguistic argument about the statute. But wasn't that really what the legislature was trying to do? Wasn't it trying to say, when our citizens sue somebody, we don't want to disadvantage them from suing our courts, or let them take the benefit of whatever the rules would be in such a matter of fact? I have two answers to that. One is that under Oregon statutory interpretation rules, you do have to start with the text. And so even if the intent was to do as you said, they have to put that intent in operational language that affects that purpose. And in this case, they didn't do that. The second is, had they done that, it would have been an unconstitutional effort. Absolutely. That's the question. We have a question that nobody's gotten to in this case because you won on the first level. That's correct. And so the court has an obligation to interpret the statutes to have a constitutional purpose. And so to interpret the statute the way the district court did is to interpret it in an unconstitutional way. Tell me why it's unconstitutional to interpret it the way the district court did. Because under Bendix, it's a facially discriminatory. If you were to read the face as the district court did and as Ms. Miller does on appeal, it's an unconstitutional discrimination against out-of-state companies. And so under Bendix, you will no further ask discriminatory. Why is it discriminatory? The out-of-state company is getting exactly the same treatment that it would have gotten had the Oregon resident come to Missouri to see it. It is not getting the exact same treatment as an Oregon manufacturer would get, which is what the Bendix court says. It's Oregon can't create a statute that benefits Oregon manufacturers and discriminates against out-of-state manufacturers. That's improper under Bendix. And the Oregon courts have applied that same analysis in the Knappenberger v. Davis case, which we cited in the reply brief. In that case, they found that there was no commerce implicated because it was a private citizen. That analysis applied here would hold that application of the statute as the district court read it to be unconstitutional. So would the statute be constitutional in your view if Missouri had a five-year statute of repose? It would be. If the court were to interpret it as a facially discriminatory. So then it would be an as-applied. It would be constitutional because you would still get the benefit of Oregon's 10-year statute of repose. But if Missouri had a 12-year statute of repose, then in your view it would be unconstitutional? It would not be discriminatory. Why not? Because if your client manufactured in Oregon, the statute of repose would only be 10 years. I think that's a closer question as to whether the extension from 10 years to 12 years imposes a substantial burden on interstate commerce. Does the answer have to be yes? It's still discrimination. Why is your answer yes? My answer is a yes for two reasons. It's not before the court, and I don't have any strong analysis to say whether the difference between 10 years and 12 years is a substantial enough burden on interstate commerce. It would make a difference. In this case, wouldn't it be the difference between Ms. Lohr being able to bring suit against her client in Oregon? That's right. Were she going to get a more favorable jury than she would if she were suing as an out-of-state or as an in-state manufacturer in Missouri? I assume the court would much rather be defending Ms. Lohr in Missouri. That may well be so. It would still serve the purpose that the Oregon legislature has had for 40 years for having a statute of repose and putting in a cutoff date as to when evidence becomes stale. It would still respect that cutoff date, and it would still respect the policy of allowing corporations to plan for their liability and not have unending liability. So I don't know if the answer would be different if it was 10 years versus 12 years, and that question isn't currently before the court. The question before the court is whether you can read the statute to impose unending liability on an out-of-state manufacturer. The only thing that that would do is it would read the statute to impose additional burdens on Oregon sellers and distributors, which was never said, and it's certainly not a stated intent of the legislature to take away the statute of repose for Oregon sellers and distributors and lessors. And let me just say my difficulty with the Commerce Clause argument is that your client does have unending liability, for instance, in the state where it manufactured the product. But the question is where those products were delivered, and those products were... It doesn't make any difference. The products could have been delivered to Oregon. It's soon judged by these questions. Point for a second. Some Missouri law applies, of course. If the plaintiff, in this case, had gone to Missouri and hired a lawyer and sued your client, there would be, as you say, unending liability. Would there not? I don't think that's true. I think the question... Do you have a statute of repose that would apply? Oregon's statute of repose may very well apply. I just argued a case in Michigan where the accident happened out of state in Indiana, which has a statute of repose. Michigan does not. I just want to remind you, as you said before, you don't get to change the hypothetical. Your client is subject to unending liability. For accidents that happen in Missouri. For accidents in which Missouri law applies. Correct. And so it's not like all of a sudden you're being subjected to liability that wouldn't have existed otherwise. Is that correct? Perhaps I'm changing the hypothetical again. But for a product that was manufactured in Oregon and caused an injury in Missouri, that same... You still have to look at... So your client says, I just made this product. If I keep it in the state of Missouri, I may sue forever. So I'm going to ship it to Oregon so I can take advantage of the statute of repose. That's not what really happens here, is it? It certainly does happen for some companies that they do business with sellers and other businesses in Oregon. They ship products into Oregon, counting on Oregon's statute of repose to apply. Or it manufactures vehicles. Correct. It sells many of them in Missouri. Yes. Certainly knowing that in Missouri there is no statute of repose. That's correct. I'm having a hard time seeing the burden on interstate commerce ever since. From Oregon saying to its citizens, you ought to be treated the same as Missouri citizens when it comes to support. What's the burden on interstate commerce? It's imposing a burden on the states as to where they should manufacture, right? It's basically saying you only get the benefits if you're an Oregon company. And Bendix says that's not proper, that's not acceptable. In that case, it was the statute of limitations. You don't get the benefit of the statute of limitations if you're not an in-state company. You can be sued until you appear in the state. And the Supreme Court said that's a facial discriminatory statute and you can't do that. But in Bendix, as I recall, the statute didn't say, those are some Missourians who are home state for its purpose. It's been a foreign Israeli incorporated in Delaware, I take it. That's the business of Howard, Michigan. But Bendix didn't say we're going to apply the statute of limitations where you come from, did it? It's not. It just said, well, I took it for statute of limitations in Oregon, in our state. One for foreigners and one for home people. That's a little bit different than saying the statute of limitations that will apply to you is the one that would have applied to you in your own state. Don't you agree? I do agree. I do agree, but that's a little bit different. I don't agree that it's not, in this case, a facial and discriminatory statute against an out-of-state manufacturer. And I also don't agree that it's supported by the text of the Oregon statute. If you compare the text of the Oregon statute to the Nebraska statute, which was before the legislators at the time that they did this, it's drastically different. The Nebraska statute says what the district court held the Oregon statute to say. The Oregon statute does not say that. And under Oregon law, the differences between, under the tectonics case that we cited in our reply brief, you are to give meaning to differences. That goes back to the question I asked you at the top of the argument. Why would Oregon adopt a statute that would only affect a very, very limited number of manufactured goods? You should only have maybe a half a dozen states. Because Oregon wanted and still wants a statute of repose and has for 40 years. And so when there are products that are special products that require an exemption from the statute of repose, like side-saddle, text with side-saddle gas tanks, or asbestos products, or Weston plants, or in this very legislative amendment, Cali light bulbs, they exempt them from the statute of repose. They don't do it by saying you do away with the statute of repose for every product that wasn't manufactured in Oregon. So if Missouri had a 50-year statute of repose, under your interpretation of the statute, that would apply or would it not? Well, I don't know. I would be arguing that it was an unconstitutional act. I see. I didn't hear that exactly. If the court doesn't mind, I would like to reserve my remaining time and address the committee's issues. Although, before you actually begin, I have one question for you. Under Oregon rules of statutory interpretation, we begin with the text of the statute. Let's say that this panel does not find the plain language of the statute capable of only one interpretation. Give me your best look from the legislative history that would support your position. My best look from the legislative history is that the Nebraska statute does exactly what the district court and Ms. Miller says that the Oregon statute did, but the legislature didn't adopt that language.  There was discussion, as I recall, in the legislative history. There was a Nebraska statute. That's correct. I'm not as accidental as I could have been. This statute was discussed during the legislative history. And it looked like at least some Oregon legislators felt they were adopting what Nebraska adopted. That's correct. Okay. I want to ask you one more question. You're sure, Judge Breyer? We'll get you into it shortly. The legislative history that's cited in the briefing, it seems to consist of statements by legislators. Is there a formal committee report or some document that says, and this often happens in Congress, but rarely happens in states? This is what we were trying to do. Not in the record. Okay. So all of the legislative history that we're doing is to acquire statements of legislators on the floor. That's correct. And under Oregon law, you can read that legislative history to be in conflict with both the text and the context. I understand your contention. I just want to make sure that my understanding of the record is correct. Absolutely. If something else were to come from some other body outside of the legislature itself, for example, that would be an issue to the legislators. Some states, for example, have an advisory group. Does the state lawyers have an open eye so that such a group might have drafted it, might have explained it, or offered some history or some background? No. There's no briefing documents for legislators?  Okay. Thank you, Your Honors. Ford urges an interpretation of the statute that would have Oregon claimants look away to the state of Manufacture and then look back again to Oregon in those instances where the state of Manufacture has no statute of ultimate oppose. But the interpretation urged here by Ford contravenes the legislature's clearly and unequivocally expressed intent regarding the effect the statute would have. Well, tell me where that clear, unequivocal intent comes from. When I see somebody who didn't want the bill on the bottom of the bill saying, you know what this bill is going to do? Yes, Your Honor, the bill is going to end. And then I see people on the other side saying, no, no, the world won't end. So how do I find a clear and unequivocal way to say this? Your Honor, from the bill's inception, which was prompted by a situation where multiple teachers were injured by light bulbs in a gymnasium, those light bulbs were 16 years old, their eyes were injured, and the state of Manufacture would have allowed the suit, but Oregon's statute barred it. So they softened the way by saying, let's adopt the statute of oppose from the state of Manufacture. Does that answer the question when there is no statute of oppose? So, again, in the legislative history, Your Honor, a situation was discussed where a claimant was injured by a bulb manufacturer in Wisconsin, which had no statute of ultimate oppose. And the legislature clearly expressed, and I believe this is actually in the Senate Judiciary Committee, the expectation that instead of actually traveling to Wisconsin, that claimant could sue in Oregon and use Wisconsin's lack of a statute of ultimate oppose in order to bring the suit. Were there any allied bulbs manufacturers we know of? I don't have that. We don't know if there were manufacturers in the state that had a statute of oppose? No, although, as Your Honor pointed out, only a handful of states do have statutes of oppose. And I would also point out that most of those states also have a useful life provision, meaning that even if there's a statute of ultimate oppose, it is rebuttable based on proof of the useful life. I assume that you are going to urge that Oregon be the choice of law in this case. Is that right? Yes, Your Honor. Okay. If your client had gone to Missouri to take advantage of a lack of statute of oppose, you're realizing that she might or might not prevail in Oregon courts, would she also argue that Oregon law applied, or is it not an issue that should be penalized by Missouri law? As far as statute of oppose is concerned? As far as substantive choice of law. I have a question. Okay. So let's assume for hypothetical the same thing that I gave to your colleague, that is that if you went to Missouri, that Missouri would choose its own to apply its own law. Is Missouri law as favorable to your client as Oregon law is on the substantive side of things? Do you know of any differences between Missouri and Oregon? Other than the lack of statute of oppose, I don't, but I can assume given Ford's decision to manufacture products there, that there are some favorable laws. I just do manage to say favorable. Well, let me say that. One of the un-UQ briefs actually refers to a Missouri law, which I looked up this morning, and it looks like it has a limitation on punitive damages. Let's suppose that Missouri adopted those punitive, a limitation on punitive damages as sort of a pre-proposal for not having a statute of oppose. How does your client get to take the benefit in part of Missouri law without getting to take advantage of having to suffer for the rest of it? Because that's what the Oregon legislature intended. Okay. Doesn't the Oregon legislature discriminate against out-of-state manufacturers? Well, I think that that point is addressed pretty clearly in the oral argument transcript at the district court level, although it wasn't raised, and therefore I actually believe this issue is precluded. The district court brought up a hypothetical where state X has a statute of ultimate oppose of 50 or 60 or 70 years, and asked Ford in that case would that statute of ultimate oppose apply, and Ford said in the affirmative, yes. How is it different then, said the court, if we have no statute of ultimate oppose? Of course, Ford had reasons why it was different, but my point is when we apply that logic to the dormant commerce clause argument, how is the issue of whether this is constitutional different for state X that has a 50-year statute of ultimate oppose versus. . . Let's suppose that we had very, very reliable legislative history, extensive debate, academic commentary, and so forth in the Missouri legislature. That's a hypothetical, yes. I hope that was not Ohio disparaging another Missouri. The Missouri legislature, we had a very, very solid legislative history that suggested that Missouri was about to adopt a statute proposed similar to Oregon's, and the manufacturers, of course, would be behind this, but the plaintiff's bar was opposed to it, and the negotiating focused on not having a statute of oppose, but adopting a limitation on compensatory and punitive damages, so that was part of the bargain. What do we do with that? Why isn't that now, why isn't Oregon now discriminating against out-of-state manufacturers that come into Oregon under Missouri's statute of oppose but don't get the benefit of the bargain they got in Missouri? Your point is well taken, Your Honor, but even under Fort's interpretation of the statute, it's discriminatory under the Dormant Commerce Clause. Does it make a difference if we're talking about no statute ultimately proposed for a 10, 15, 20 years? That's right, but now that leads to the Dormant Commerce Clause problem, doesn't it? Yes, Your Honor, it does, and if you see fit to strike down the statute in its entirety, I would have no argument with that. Well, but I suppose that the pending part of the statute, if you look at the Dormant Commerce Clause problem, is the notion that you're entitled to take advantage of the statute of oppose or lack of it in either state. There's certainly nothing wrong with Oregon enacting a 10-year statute of oppose. I can't think of anything unconstitutional about that. No, Your Honor. What would be unconstitutional would be the part of the statute that says, or let's forget what it says for a moment. Let's interpret it your way. Or the lack of statute of oppose, for instance. We wouldn't strike down the full statute. We would strike down the part of the statute that discriminates. I understand, but... So let's get back to the statute of oppose for a second. If it says in effect immediately, but you've read it a hundred times and so on, we apply the Oregon statute of oppose or any statute of oppose, blah, blah, blah, blah. There isn't a statute of oppose in Missouri, correct? That's correct, Your Honor. How can any mean? How can any refer to something that doesn't exist?  Any statute of oppose for an equivalent civil action in the state in which the product is being extracted? Okay, so is there any statute of oppose for an equivalent civil action in the state of Missouri? I don't think it's... I understand your statutory interpretation, Your Honor. This is a fact. I understand. Is there any statute of oppose for an equivalent civil action in the state of Missouri? No, but there is an equivalent civil action, and that would not be barred by a statute of ultimate oppose. I don't think it's controversial to say that this statute is perhaps not the most artfully drafted of statutes, which again... No. Yes. Again, that's against the plain meaning argument promulgated by Ford, but I think it's pretty clear that the legislature intended that the injured party would have the length of time to allow it in the state where the product was originated, because that is what it put in the press release on the day that this statute was enacted. What did it put in the press release? And how can I rely on a press release? You're saying it is what it put in the press release. Who was it? Well, I'm not sure who drafts the legislative press release, but to me that's a pretty clear indication of what the legislature understood the effect of the statute to be. If I can go back to the statute in the words itself before we continue the quagmire of the legislative intent, the statute provides that the period of ultimate oppose for product liability actions is a later of ten years or the expiration of any statute of oppose in the state of manufacture. So to me, the plain language of the look-away provision contemplates applying a foreign statute of oppose that someday will expire. How do you square what I just announced with the district court's interpretation, which allows for the application of a nonexistent statute in an unlimited period of which to bring suit? Because on this, maybe we all can agree as well, if Oregon wanted to do what you're saying it did here, all it had to do was repeal the statute of oppose, period, end of story. Why craft this language? To answer the second part of your question, it is clear from the history that this is a statute of compromise, and part of the compromise is to protect and incentivize Oregon manufacturers. I think as far as the language of the statute is concerned, to answer the earlier part of your question, Ford argues that we're talking about comparing the later of ten years versus the later of never. I would argue that we're actually comparing the later of ten years with the later of an undetermined time in the future, i.e., infinity, potentially. And between ten years and infinity, I'm no mathematician, but I believe infinity is the larger number. So that would be how I would interpret that. If infinity doesn't expire and the statute uses the word expiration. You're right, Your Honor. And, again, I don't think this is the most heartfully drafted statute, but the legislative history for every person that says this is going to be the effect of the statute, whether they're opposed to the statute or in favor of it, the person introducing the statute who said it would have the same effect as the Nebraska statute, none of the persons who said the effect will be this, that in a state with no statute of ultimate repose, that no statute of ultimate repose will apply to the claim, no one was corrected. There was no other interpretation put forth. It is clearly and unequivocally what the legislature understood the meaning of the statute to be. So what import do you give to the fact that they didn't adopt the Nebraska statute, which was before them, which I think does what you suggest the Oregon statute does. I understand you're relying on statements of people, but they had before them a statute which would have done exactly what you wanted and chose instead to adopt one which has the language of the judge. It's so hard to say it to you. What import do we give to that? It's true that they didn't adopt the statute verbatim, and we wouldn't be here today had they done so. But in ER 43, when the bill is introduced to the floor, it is introduced as having the same effect. When it is attacked, it is attacked as having the same effect. And as far as that language not occurring in the Oregon statute, that argument cuts both ways, because if the Oregon legislature had intended us to look away and look back again, they could have included a provision to that effect as well, and they did not. Counsel, would there be any benefit in this court certifying this to the Oregon Supreme Court? The problem here is that because of the nature of the provision, this is almost always a crisis in the U.S. District Court, because there's almost always going to be a diversity of citizenship, so that it's not especially it's not likely to percolate under the Oregon courts. I did look at that issue, and although from my standpoint, for my client, for my client it would mean a couple of years or more added on to the length in which decisions will be made. But from the standpoint of your honors, candidly, I believe certification is appropriate under ORS 2200 through 255 and West Helicopter Services v. Rogerston Aircraft, the reason being the Ninth Circuit's designated court question is one of Oregon law. It's determinative of the cause, and there's no controlling Oregon precedent. All we have, in fact, is a, other than the District Court case, is a Multnomah County Circuit Court case, which looked at the same issue, and in that case Judge Reichhardt said the legislator intended that a person sued in Oregon should have no greater bothers to a cause of action that would exist if the action was brought in the state of manufacture, and that was in Urgevon v. Naco, Multnomah County Circuit Court case. In that case, the state of manufacture, Kentucky, had no statute of ultimate repose, and the circuit court concluded that it follows that no bar of repose exists to this action. Similarly, in this case, I believe the legislator's intent is clear. Do you know the status of that case? Is that case on appeal in the Oregon courts? It was settled after. Okay, so I'm not going to give you an answer out of your own words, is it? Okay. So, to answer your question regarding certification, it's a matter of why I believe it's appropriate in this case. If the court has no other questions, I ask you to affirm the District Court's well-reasoned opinion. Thank you so much, Ms. Ellis. You're actually over your time. I will give an affirmative vote. Thank you, Your Honor. I do have a couple of points. If the court does find it unconstitutional as for Urgevon, it should. There is a severability provision in Oregon statutes. That's 174-040. So, there is another case as to the definition of any. Any can either mean one or more, or perhaps it can mean if any, but either of those would lead you to the same result. That case is North Merriam School District to Actar. The Actar insurance is 206 Oregon App 593. And I raise one more point about the context here. In a case called Johnson v. Star Machinery, which I know is cited in both of the amicus briefs, the court there held that the statute of proposed applicable to negligence actions also applies to district liability actions, holding that otherwise you would find a seller with no liability, with no fault. There's no liability after ten years. Sorry, I did that wrong. A seller with fault, a negligent seller, would have liability only for ten years, but a seller without fault, who's being held liable under strict liability, would be liable forever. And the court said that can't be the meaning of what this, of the statute. And so it held that that negligent statute of proposed applied on strict liability as well. The same would hold true here. What's your view of my certification? The last time this court certified, and it's in one of the cases, actually, that kind of cites in the appellee brief, was patent, one of the times, was patent v. Target. In that case, this court certified a question with the Oregon Supreme Court, finding the same problem where the text seemed to say one thing and there was legislative history that said the other. The Oregon Supreme Court answering that question said there is an unabridged gap between what the legislature supposedly meant to do and what they did, and you have to convert the intent into operational language, and you have to go with the text. So for that reason, I think if you go with the plain language, you're arguing why it used to go in here. I'm asking you a different question. The question is, like, when there, if you're so confident about it, why shouldn't we ask the Oregon court for who it was? I think that the court can ask the Oregon court about what the Oregon law means. I only believe that the court has the statutory interpretation rules in front of it to make the decision. No, no, the question I was asking was what's your client's position on certification? If the court believes that it doesn't have the information to interpret the statute based on the plain language and the context, it's certainly appropriate to certify the question. Is there any reason to believe the record before the Oregon Supreme Court may be different to the record before us at the moment? No, Your Honor. Okay. So for that reason, we ask the court to reverse the district court and remand with instructions to grant summary judgment to the court. Thank you. We thank both counsels for the argument. The case was well designed today. Thank you very much. That, of course, takes a turn.
judges: Bybee, Hurwitz, Zouhary